BARBARA C. GREGG *vs.* COMMISSIONER OF CORPORATIONS
AND TAXATION.

Norfolk.    April 10, 1942. — March 28, 1944.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Taxation,* Succession tax. *Annuity.*

Insurance as defined in G. L. (Ter. Ed.) c. 175, § 2, does not include an
annuity contract having a provision for the payment on the death of
the annuitant to a designated beneficiary of a benefit measured by
approximately the difference between the amount paid to the com-
pany by the annuitant and the total of the payments made to him by
it during his life.

A succession tax properly was assessed under G. L. (Ter. Ed.) c. 65, § 1,
upon a "death benefit" paid upon the death of the annuitant under a
retirement annuity contract providing that, in consideration of annual
payments by the annuitant to the company issuing the contract, it
would pay to him a life annuity commencing upon his reaching a
specified age and, in the event of his death before reaching that age,
would pay to a designated beneficiary the "death benefit" in a sum
approximately equal to the total amount paid to the company by
the annuitant, and that the annuitant should have certain options
and privileges to change the method of the annuity payments to him,
to substitute a life insurance policy for the contract, to terminate the
contract and accept a cash surrender value, and to change the death
beneficiary.

PETITION, filed in the Probate Court for the county of
Norfolk on May 17, 1941.

The case was heard by *Reynolds,* J.

*O. Tudor,* for the taxpayer.

*H. E. Magnuson,* Assistant Attorney General, for the
commissioner of corporations and taxation.

*B. Sanderson,* by leave of court, submitted a brief as
amicus curiae.

RONAN, J.    This is an appeal by Barbara C. Gregg from
a decree of the Probate Court of Norfolk County dismissing
her petition filed under G. L. (Ter. Ed.) c. 65, § 27, seeking
an abatement of a succession tax, assessed by the respond-
ent and paid by her, with respect to the death benefit,
accumulated interest and dividends received by her as the

beneficiary under a retirement annuity contract which her husband, Donald Gregg, had obtained from The Equitable Life Assurance Society of the United States, hereafter called the society. This contract was issued on February 19, 1932, when Gregg was fifty-two years of age. The society, in consideration of $2,400 which was to be paid annually by Gregg until the due date of the first annuity payment or until his death prior thereto, agreed to pay him a fixed annuity for life when he reached sixty-five years of age or, in case he died before he reached that age, to pay a death benefit to his wife who had been named as beneficiary in the contract. Gregg had a choice of receiving the dividends in cash, applying them toward the payment of any premium or permitting them to accumulate at interest with the society. He also had an option, which could be exercised before the annuity payments became payable, of securing either a life annuity or a refund annuity at any age, consisting of monthly payments in the amounts scheduled in the contract. Gregg did not exercise this option. He reserved the right to change the beneficiary but he did not make any change. He died in the eighth contract year after having paid the society $19,200 in premiums. The cash surrender value of the contract was $19,632. The value of the death benefit was $19,680. The amount of the death benefit depended upon the amount paid in by Gregg, the annuitant.

The question presented is whether the receipt by the beneficiary under this retirement annuity contract of the death benefit, accumulated dividends and interest is subject to the succession tax provided by G. L. (Ter. Ed.) c. 65, § 1. This statute, in so far as material, provides that "All property within the jurisdiction of the commonwealth, corporeal or incorporeal, and any interest therein, belonging to inhabitants of the commonwealth, . . . which shall pass . . . by deed, grant or gift, . . . made or intended to take effect in possession or enjoyment after . . . death . . . shall be subject to a tax."

A succession tax is imposed upon property passing by deed, grant or gift, except in cases of a bona fide purchase

for full consideration, made and intended to take effect in possession or enjoyment at or after the death of the grantor or donor. The object of the statute is to tax the shifting of the economic benefits and enjoyment of property from the dead to the living. The fact that the recipient had acquired an interest in the property by a transfer inter vivos from the owner does not bring the transfer beyond the reach of the statute if the possession and enjoyment of the property is dependent upon and brought about by the death of the owner. The full fruition of a transfer or gift by the passing of its use and enjoyment to the grantee or donee upon the death of the grantor or donor is the event that makes the transaction subject to the tax. *State Street Trust Co.* v. *Treasurer & Receiver General,* 209 Mass. 373. *Saltonstall* v. *Treasurer & Receiver General,* 256 Mass. 519. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 267 Mass. 240. *Worcester County National Bank* v. *Commissioner of Corporations & Taxation,* 275 Mass. 216. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 294 Mass. 551.

Our present inquiry is to determine whether the appellant derived any economic benefit from the annuity contract which resulted from the death of her husband. He was building up a fund at the rate of $2,400 a year for the primary purpose of acquiring monthly payments during the rest of his life after he had become sixty-five years of age. He was making an investment for his own personal benefit. It was made in the expectation of living and not in contemplation of death. It is true that the contract contained a provision for the payment of a death benefit, but that provision was inserted in order that the annuitant should not lose all his investment if death came to him before annuity payments became due from the society. The annuitant had designated his wife as the beneficiary to receive the death benefit but he also reserved the right to change the beneficiary. The annuitant, however, had the control of the money which he had paid in to the society to the extent permitted him under the contract. He could change the method of the payment of annuities to him, and select a

life annuity or a refund annuity beginning at any age, or furnish satisfactory evidence of insurability and substitute a life insurance policy for the contract, or accept the cash surrender value and terminate the contract. His control was not substantially different from that exercised by the settlor of a revocable trust. His position was not unlike that of one depositing a certain amount in a bank which he could withdraw at the end of a certain period, otherwise it was to be paid to such third person as he should designate. The receipt, by a beneficiary under such a revocable trust or deposit arrangement, of the trust funds or the deposit would come within the taxing statute for in neither case was it certain until the death of the settlor or depositor whether he would revoke the trust or designate a new beneficiary. *New England Trust Co.* v. *Abbott*, 205 Mass. 279. *Pratt* v. *Dean*, 246 Mass. 300. *Nickerson* v. *Harding*, 267 Mass. 203. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 294 Mass. 551.

, The appellant relies upon *Tyler* v. *Treasurer & Receiver General*, 226 Mass. 306, and *Welch* v. *Commissioner of Corporations & Taxation*, 309 Mass. 293, in which it was held that the receipt by the beneficiary of the proceeds of a life insurance policy upon the death of the insured was not subject to the succession tax. She does not contend that the annuity contract was a policy of insurance upon the life of her husband, but she contends that her right to receive the death benefit was so similar to the right of a beneficiary under a life insurance policy to receive the proceeds that the receipt of the death benefit should come within the principle of the two decisions last cited.

The interest of the appellant. in the death benefit was materially different from an interest as a beneficiary in a life policy. The primary form of an annuity contract is one wherein, upon the payment of a lump sum by one party to the other, the latter promises to pay a fixed amount annually to the other during his lifetime. This form of contract, however, was not wholly satisfactory, undoubtedly due to the fact that the contract could be fully performed by the payment of only a small portion of the sum paid by the

annuitant if he should die after a few annual payments had been made.   Another form of an annuity contract was developed to make such contracts more attractive to the public by providing that, upon the death of the annuitant, the balance of the amount paid in by him and remaining after the making of the annual payments to him less slight deductions for expenses incurred by the company issuing the contract should be paid to some person designated by him or paid over as a death benefit to such person.   The annuity contract in the instant case was based not upon the contingency of death but upon the expectation of living. The appellant's husband did not submit to a physical examination by any physician before the contract of annuity was executed.   The only possible risk that the society took was that the annuitant might live too long.   It took no risk whatever with reference to the death benefit for in no event was it required to pay more than it had received.   It was not bound to pay a certain lump sum irrespective of the amount paid in as a life company is required to pay upon the death of the insured.   An annuity is not an indemnity against loss by death like a life policy.   A man purchases an annuity for his own benefit but one usually obtains life insurance for the protection of his dependents.   While it may be that the annuitant pays a higher premium to secure a provision for the payment of a death benefit, and this provision, considered by itself, somewhat resembles life insurance, yet the annuity contract was not divisible, and the fact that the contract contained such a provision, or any other similar provision calling for refunded annuities in the event of the death of the annuitant before he has enjoyed the full benefit of his investment, does not convert the annuity contract into a life insurance policy or exempt those who receive the death benefit or further annuities subsequent to the death of the annuitant from a succession tax, either under statutes that expressly exempt the proceeds of life insurance policies up to a certain amount or in jurisdictions where, in the absence of any mention of insurance in the taxing statutes, the proceeds of life insurance are not taxed.   *Helvering* v. *Le Gierse,* 312 U. S. 531.   *Estate of*

*Keller* v. *Commissioner of Internal Revenue,* 312 U. S. 543. *Old Colony Trust Co.* v. *Commissioner of Internal Revenue,* 102 Fed. (2d) 380. *Commissioner of Internal Revenue* v. *Clise,* 122 Fed. (2d) 998. *Mearkle's Estate* v. *Commissioner of Internal Revenue,* 129 Fed. (2d) 386. *In re Walsh,* 19 Fed. Sup. 567. *Kernochan* v. *United States,* 29 Fed. Sup. 860. *In re Thornton's Estate,* 186 Minn. 351. *Central Hanover Bank & Trust Co.* v. *Martin,* 129 N. J. Eq. 186. *Matter of Sothern,* 257 App. Div. (N. Y.) 574. *Matter of Newton,* 177 Misc. (N. Y.) 877. *Matter of Burtman,* 180 Misc. (N. Y.) 299. *Bayer's Estate,* 345 Penn. St. 308.

The decision in *Tyler* v. *Treasurer & Receiver General,* 226 Mass. 306, cannot be extended to relieve from taxation the receipt of the death benefit by the appellant. The issue there presented, to adopt the words of the decision, as stated at page 307, was: "The question raised in these cases is whether money paid to the beneficiary under a policy of life insurance is subject to the succession tax. The policies here in issue all are well recognized forms of genuine life insurance." The ground of that decision was that the rights of the beneficiary attached at once by being designated as beneficiary and became vested and effective and were not dependent for their efficacy upon the happening of any future event. It was accordingly held that naming one as beneficiary was not making a grant or gift within the descriptive words of the taxing statute as one "made or intended to take effect in possession or enjoyment after the death of the grantor." That decision was reëxamined and affirmed in *Welch* v. *Commissioner of Corporations & Taxation,* 309 Mass. 293.

An examination of the original records in the *Tyler* case shows that the policies there involved were "participating endowment" policies which provided for the payment of twenty annual premiums by the insured and for the payment by the company of the amounts named in the policies to the insured if he was alive twenty years from the date of their issuance, otherwise they were payable on his death to the beneficiary named by him. During the course of the opinion it was stated at pages 307–308: "A policy

of life insurance is a contract. It is commonly a tripartite agreement, to which the parties are the insured, the insurer and the beneficiary. A policy of life insurance is a contract for a consideration paid, usually in money, in one sum or at different times during the continuance of the risk, which involves the payment of money or other thing of value by the insurer to the family, kindred, representative, or other designated beneficiary of the holder of the policy, conditioned upon the continuance or cessation of human life, or which involves a guaranty, assurance or pledge of an endowment or an annuity. *Commonwealth* v. *Wetherbee,* 105 Mass. 149, 160. See St. 1907, c. 576, § 66; *Curtis* v. *New York Life Ins. Co.* 217 Mass. 47." The appellant relies upon this sentence. That statement so far as it applied to an annuity was not a matter to which the attention of the court was then directed and as so applied would not be accurate. It is, in effect, a paraphrase of the statutory definition of a life insurance company as set forth in St. 1907, c. 576, § 66, see now G. L. (Ter. Ed.) c. 175, § 118. But it does not follow that all contracts issued by a life insurance company in the ordinary course of business are contracts of life insurance for they are authorized to issue contracts of annuity. Insurance is defined by G. L. (Ter. Ed.) c. 175, § 2, which provides that a contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do an act valuable to the insured, upon the destruction, loss or injury of something in which the other party has an interest. This definition first appeared in St. 1887, c. 214, § 3, and adopted the common law definition of insurance set forth in *Commonwealth* v. *Wetherbee,* 105 Mass. 149. *Claflin* v. *United States Credit System Co.* 165 Mass. 501. *Attorney General* v. *C. E. Osgood Co.* 249 Mass. 473. That definition does not include annuity contracts. *Curtis* v. *New York Life Ins. Co.* 217 Mass. 47. *Mutual Benefit Life Ins. Co.* v. *Commonwealth,* 227 Mass. 63. Neither do we think it includes an annuity contract providing for the payment of a death benefit measured by approximately the difference between the amounts paid in by the annuitant

and the total annuities paid by the company to him. The distinction between an annuity contract and a life policy has been frequently pointed out. *Helvering* v. *Le Gierse,* 312 U. S. 531. *Estate of Keller* v. *Commissioner of Internal Revenue,* 312 U. S. 543. *Northwestern Mutual Life Ins. Co.* v. *Murphy,* 223 Iowa, 333. *Succession of Rabouin,* 201 La. 227. *State* v. *Probate Court of Ramsey County,* 186 Minn. 351. *State* v. *Equitable Life Assurance Society,* 68 N. D. 641. *People* v. *Security Life Ins. & Annuity Co.* 78 N. Y. 114. *People* v. *Knapp,* 193 App. Div. (N. Y.) 413, affirmed without opinion 231 N. Y. 630. *Hall* v. *Metropolitan Life Ins. Co.* 146 Ore. 32. *Commonwealth* v. *Metropolitan Life Ins. Co.* 254 Penn. St. 510. *Bayer's Estate,* 345 Penn. St. 308. *Daniel* v. *Life Ins. Co.* (Tex. Civ. App.) 102 S. W. (2d) 256. *State* v. *Ham,* 54 Wyo. 148. Indeed no such contract as that in the instant case was involved in the *Tyler* case. The policies there were treated as "well recognized forms of genuine life insurance." Neither policy called for any annual payments to the insured. The statement in that opinion that an annuity was a policy of life insurance was unnecessary to the decision, inconsistent with our common law and statutory definition of insurance and contrary to the great weight of authority.

The decision in the *Tyler* case must be confined to its facts. It cannot rightly be extended to an annuity contract. The *Tyler* case was followed but not extended by *Welch* v. *Commissioner of Corporations & Taxation,* 309 Mass. 293.

There was no error in the decree of the Probate Court dismissing the petition.

*Decree affirmed.*